**FILED**
MARTHA J. SMITH
JUL 11 2016
14:35
CIRCUIT CLERK
CLARK COUNTY, ARKANSAS

## IN THE CIRCUIT COURT OF CLARK COUNTY, ARKANSAS
## CIVIL DIVISION

TERRY COX, AS ATTORNEY-IN-FACT                          PLAINTIFF
FOR KENNETH HARRIS

vs.                          CASE NO.: 10CV-16-98

COURTYARD GARDENS HEALTH AND                          DEFENDANTS
REHABILITATION, LLC, ARKANSAS SNF OPERATIONS
ACQUISITIOIN, LLC, and ARKANSAS NURSING
HOME ACQUISITION, LLC

### COMPLAINT

COMES NOW, the Plaintiff, Terry Cox, as attorney-in-fact for Kenneth Harris, by and

through his attorneys, Stanley & Woodard, PLC, and for his Complaint against Defendants, state

as follows:

### JURISDICTIONAL STATEMENT

1. Kenneth Harris was a resident of Courtyard Gardens Health and Rehabilitation

Center, (sometimes referred to as "facility"), a nursing home located at 2701 Twin Rivers Dr.,

Arkadelphia, Clark County, Arkansas, from October 15-27, 2015.

2. Terry Cox is the Power of Attorney of Kenneth Harris pursuant to the durable

power of attorney, executed on December 10, 2015 and attached hereto as **Exhibit 1**, and brings

this action on behalf of Kenneth Harris.

3. Defendant Courtyard Gardens Health and Rehabilitation, LLC (hereinafter

"Courtyard Gardens") is a domestic corporation and did business in the State of Arkansas by

owning, operating, managing and/or providing services for Courtyard Gardens Health and

Rehabilitation, LLC. At all times material to this action, Courtyard Gardens was a control person

as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the

**EXHIBIT**
1

Plaintiffs' damages. The agent for service of process for Courtyard Gardens is The Registered Agent Company, 300 S. Spring St., Little Rock, Arkansas, 72201.

4. Defendant Arkansas SNF Operations Acquisition, LLC is a domestic corporation and did business in the State of Arkansas by owning, operating, managing and/or providing services for Courtyard Gardens Health and Rehabilitation, LLC. At all times material to this action, Arkansas SNF Operations Acquisition, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for Arkansas SNF Operations Acquisition, LLC is The Registered Agent Company, 300 S. Spring St., Little Rock, Arkansas, 72201.

5. Defendant Arkansas Nursing Home Acquisition, LLC is a domestic corporation and did business in the State of Arkansas by owning, operating, managing and/or providing services for Courtyard Gardens Health and Rehabilitation, LLC. At all times material to this action, Arkansas Nursing Home Acquisition, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for Arkansas Nursing Home Acquisition, LLC is The Registered Agent Company, 300 S. Spring St., Little Rock, Arkansas, 72201.

6. Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

7. Jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS

8. Kenneth Harris was a resident of Courtyard Gardens from October 15-27, 2015.

9. Defendants were aware of Mr. Harris' medical condition and the care he required when they represented that they could adequately care for his needs.

2

10.     In an effort to ensure that Kenneth Harris and other residents whose care was partially funded by the government were placed at Courtyard Gardens Health and Rehabilitation Center, Defendants held themselves out to the Arkansas Department of Human Services (DHS) and the public at large as being:

a)     Skilled in the performance of nursing, rehabilitative and other medical support services;

b)     Properly staffed, supervised and equipped to meet the total needs of their nursing home residents;

c)     Able to specifically meet the total nursing home, medical and physical therapy needs of Kenneth Harris and other residents like him; and

d)     Licensed by DHS and complying on a continual basis with all rules, regulations and standards established for nursing homes.

11.     The Defendants were on notice and aware of problems with resident care at the facility, including those failures and deficiencies that caused injury to Kenneth Harris, but did nothing to correct those problems.

12.     Under state and federal law, the governing body of a nursing home is composed of individuals or a group in whom the ultimate authority and legal responsibility is vested for conduct of the nursing home. *See* Ark. Office of Long Term Care R. & Regs. § 100. All long-term care facilities must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility. *See* 42 C.F.R. § 483.75(d)(1). The governing body has a legal duty to adopt effective patient care policies, administrative policies and by-laws governing the operation of the facility in accordance with legal requirements of state and federal law. *See* Ark. Office of Long Term Care R. & Regs. § 301.1. The Courtyard Gardens Health and Rehabilitation Center governing body was legally responsible for establishing and implementing policies regarding management and operation of the facility and for hiring a qualified

3

administrator, in whom the ultimate authority and legal responsibility was vested for patient care in the nursing home.

13.    Defendants failed to discharge their obligations of care to Kenneth Harris with a conscious disregard for his rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Kenneth Harris, as more fully set forth below. Defendants knew that their facility could not provide the minimum standard of care to the weak and vulnerable residents of Courtyard Gardens Health and Rehabilitation Center The severity of the recurrent negligence inflicted upon Mr. Harris while a resident of the facility accelerated the deterioration of his health and physical condition and resulted in physical and emotional injuries. While a resident at Courtyard Gardens Health and Rehabilitation Center, Kenneth Harris sustained multiple injuries including, but not limited to, the following:

   a)    Significant change in condition

   b)    Abnormal labs

   c)    Severe dehydration

   d)    Severe pain

14.    The injuries sustained by Kenneth Harris, as well as the conduct specified below, caused him to lose his personal dignity and to suffer extreme and unnecessary pain, anguish, and emotional trauma.

15.    Defendants controlled the operation, planning, management and quality control of Courtyard Gardens. The authority exercised over the nursing facility included, but was not limited to, budgeting, marketing, human resources management, training, staffing, creation and

4

implementation of all policy and procedure manuals used by Courtyard Gardens, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

16.    Upon information and belief, the Defendants operated and managed Courtyard Gardens so as to maximize profits by reducing staffing levels below that needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing facilities. Pursuant to the Office of Long Term Care staffing longs, Courtyard Gardens fell below the state *minimum* staffing guidelines on at least six (6) shifts during Mr. Harris' 12 day residency in October of 2016. **(Exhibit 2)** The facility was operating short 23% in September of 2015 and obviously on notice that staffing was an issue. **(Exhibit 3)** Thus, Defendants knowingly and/or with reckless disregard for the consequences of their actions caused staffing levels at their facility to be set so that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents. Upon information and belief, Defendants knowingly established staffing levels that created recklessly high nurse/resident ratios and disregarded patient acuity levels as well as the minimal time required to perform essential functions. These acts of malfeasance directly caused injury to Kenneth Harris and other residents of Courtyard Gardens and were known to Defendants.

17.    The acts and omissions of Defendants were motivated by a desire to increase the profitability by reducing expenditures for needed staff, training, supervision and care to levels that would predictably lead to severe injury.

18.    Plaintiff alleges that, during Kenneth Harris's residency at Courtyard Gardens, Mr. Harris was under the care, supervision and treatment of Defendants and that the injuries complained of were proximately caused by the acts and omissions of the Defendants.

5

19.     Defendants were vicariously liable for the acts and omissions of all persons or entities under their control, either directly or indirectly, including employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing or contributing to the injuries of Kenneth Harris.

## CASE OF ACTION AGAINST THE DEFENDANTS

## COUNT ONE: NEGLIGENCE

20.     Plaintiff incorporates the allegations contained in Paragraphs 1 – 19 as if fully set forth herein.

21.     The Nursing Home Defendants owed a non-delegable duty to residents, including Kenneth Harris, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

22.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Kenneth Harris, to exercise reasonable care in providing care and services in a safe and beneficial manner.

23.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Kenneth Harris, to hire, train and supervise employees to deliver care and services to residents in a safe and beneficial manner.

24.     The Nursing Home Defendants owed a non-delegable duty to residents, including Kenneth Harris, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

25.     The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Kenneth Harris, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

6

26.     The Nursing Home Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse and neglect of Kenneth Harris. The negligence of the Nursing Home Defendants includes, but is not limited to, the following acts and omissions:

a)      The failure to ensure that Mr. Harris attained and maintained his highest level of physical, mental, and psychosocial well-being;

b)      The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of Mr. Harris;

c)      The failure to increase the number of nursing personnel to ensure that Kenneth Harris received timely and accurate care assessments, and proper treatment, medication and diet;

d)      The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Mr. Harris throughout his residency;

e)      The failure to increase the number of nursing personnel at the facility to ensure that Kenneth Harris:
    1)      Received timely and accurate care assessments;
    2)      Received proper treatment, medication, and diet; and
    3)      Was protected from injuries by the correct use of ordered and reasonable safety measures.

f)      The failure to adequately screen, evaluate, and check references, test for competence and use ordinary care in selecting nursing personnel to work at the facility;

g)      The failure to provide adequate supervision and assistance to Kenneth Harris to prevent the injuries described in ¶¶ 13;

h)      The creation of and/or the failure or refusal to identify and correct the injuries, conditions, and circumstances described in ¶¶ 13 and exhibited by Mr. Harris;

i)      The failure to terminate employees at the facility assigned to Mr. Harris who were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Arkansas Department of Human Services and the Office of Long Term Care;

j)   The failure to assign nursing personnel at the facility duties consistent with their education and experience based on:

1)   Kenneth Harris' medical history, condition, and nursing and rehabilitative needs;

2)   The characteristics of the resident population residing in the area of the facility where Kenneth Harris was a resident; and,

3)   The nursing skills needed to provide care to such resident population.

k)   The failure by the members of the governing body of the facility to discharge their legal and lawful obligation by ensuring that the rules and regulations designed to protect the health and safety of residents, such as Kenneth Harris, as promulgated by the Arkansas Department of Human Services and the Arkansas Office of Long Term Care, were consistently complied with on an ongoing basis and ensuring appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

l)   The failure to adopt adequate guidelines, policies, and procedures of the facility for documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of the facility, an employee of the facility or any interested person;

m)   The failure to maintain medical records on Kenneth Harris in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible and systematically organized with respect to diagnosis, treatment and assessment and establishment of appropriate plans of care and treatment; and

n)   The failure to properly in-service and orient employees to pertinent patient care needs to maintain the safety of residents.

27.   A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Kenneth Harris.

28.   Defendants further breached their duty of care to Kenneth Harris by violating certain laws and regulations in force in the State of Arkansas at the time of the occurrences discussed herein including, but not limited to, the following:

a)   By failing to comply with rules and regulations promulgated by the Arkansas Department of Human Services, Division of Social Services, Office of Long Term Care, pursuant to authority expressly conferred by Act 28 of 1979 (Ark. Code Ann. § 20-10-202, *et seq.*) and published in the Long Term Care (LTC) Provider Manual on April 8, 1984, and the supplements thereto, and federal minimum standards imposed by the United States Department of Health and Human Services;

b)   By failing to provide the necessary care and services to attain or maintain the highest practicable, physical, mental and psychosocial well-being of Kenneth Harris in accordance with the comprehensive assessment and plan of care;

c)   By failing to ensure a nursing care plan based on Kenneth Harris' problems and needs was established that contained measurable objectives and timetables to meet his medical, nursing, and mental and psychosocial needs as identified in his comprehensive assessment;

d)   By failing to review and revise Kenneth Harris's nursing care plan when his needs changed;

e)   By failing to treat Kenneth Harris courteously, fairly and with the fullest measure of dignity;

f)   By failing to provide sufficient nursing staff and nursing personnel to ensure that Kenneth Harris attained and maintained his highest practicable physical, mental and psychosocial well-being;

g)   By failing to provide a safe environment;

h)   By failing to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident; and

i)   By criminally abusing and neglecting Kenneth Harris and by failing to report that abuse in violation of the Adult and Long-Term Care Facility Resident Maltreatment Act, Ark. Code Ann. §§ 12-12-1701 *et seq.*

29.   A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Defendants was a proximate cause of Kenneth Harris' injuries as more specifically described herein. Mr. Harris suffered personal injury including pain and

suffering, mental anguish and emotional distress. Plaintiff prays for compensatory damages against Defendants for the negligent treatment of Kenneth Harris, including the grief suffered as well as the expenses of the hospital stay and other related costs.

30.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish and emotional distress in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT TWO: MEDICAL MALPRACTICE

31.    Plaintiff incorporates the allegations contained in Paragraphs 1 – 30 as if fully set forth herein.

32.    Defendants are either medical care providers as defined by Ark. Code Ann. § 16-114-201(2) and/or liable for medical care providers as defined by Ark. Code Ann. § 16-114-201(2).

33.    Defendants owed a non-delegable duty to residents, including Kenneth Harris, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

34.    Defendants owed a non-delegable duty to assist all residents, including Kenneth Harris, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

35.    Defendants failed to meet the applicable standards of care and violated their duty of care to Kenneth Harris through mistreatment, abuse and neglect. Defendants failed to adequately supervise nurses and aides and failed to hire sufficient nurses and aides. As such, the

nurses and aides were unable to provide Kenneth Harris the requisite care, and as a result, negligent acts occurred as set forth in this paragraph. The medical negligence of Defendants includes, but is not limited to, the following acts and omissions:

a) The failure to ensure that Kenneth Harris received the following:

1) Timely and accurate care assessments;
2) Proper treatment, medication and diet;
3) Necessary supervision; and
4) Timely nursing and medical intervention due to a significant change in condition.

b) The failure to provide, implement, and ensure adequate nursing care plan revisions and modifications as the needs of Kenneth Harris changed;

c) The failure to provide, implement and ensure that an adequate nursing care plan for Kenneth Harris was followed by nursing personnel;

d) The failure to provide Kenneth Harris with adequate and appropriate nursing care, treatments, and medications after the development of pressure sores, infections, and injuries;

e) The failure to ensure that Kenneth Harris was assessed in order to receive adequate and proper nutrition, fluids, and therapeutic diet;

f) The failure to provide adequate care and treatment to Kenneth Harris; and

g) The failure to adequately and appropriately monitor Kenneth Harris and recognize significant changes in his health status.

36. A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed in the above complaint. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Kenneth Harris's injuries, which were foreseeable. Mr. Harris suffered personal injury, including excruciating pain and suffering, mental anguish and emotional distress.

37. Defendants were negligent and reckless in breaching the duties owed to Kenneth Harris under the Medical Malpractice Act for the reasons specifically enumerated in this Complaint.

38. As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Kenneth Harris suffered injuries as described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants, including, but not limited to, medical expenses, pain and suffering, mental anguish and emotional distress in an amount exceeding that required for federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: BREACH OF THE ADMISSION AGREEMENT

39. Plaintiff incorporates the allegations contained in paragraphs 1–38 as if fully set forth herein.

40. Before being admitted to Courtyard Gardens Health and Rehabilitation Center, Kenneth Harris was required to enter into an Admission Agreement, whereby the facility agreed to provide nursing and custodial care, necessary goods, services, and/or treatment to Mr. Harris in exchange for valuable consideration.

41. Kenneth Harris, or those acting on his behalf, did what the Agreement for Care required of him in that valuable consideration was paid for the goods, services, care and treatment, including personal or custodial care, and professional nursing care Defendants promised to provide.

42. Defendants breached their contractual duties by failing to provide the care and services described in the Agreement causing damage to Kenneth Harris.

43. As a result, the Plaintiff is entitled to compensatory damages and consequential damages.

44. Plaintiff is entitled to seek punitive damages for breach of contract, because Defendants knew or ought to have known, in the light of the surrounding circumstances, that its

12

nonfeasance in breach of the admissions agreement would naturally and probably result in injury or damage, yet Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

45.     Plaintiff, for good cause, is unable to attach a copy of the Admissions Agreement upon which this claim is based, because it is in the possession of the Defendants.

**COUNT FOUR: VIOLATIONS OF THE
LONG-TERM CARE FACILITY RESIDENTS RIGHTS ACT**

46.     Plaintiff incorporates the allegations contained in Paragraphs 1–45 as if fully set forth herein.

47.     Among Defendants, the licensee(s) of Courtyard Gardens had a statutorily-mandated duty to provide Kenneth Harris with his basic, nursing home resident's rights as set forth in the Protection of Long-Term Care Facility Residents Act, Ark. Code Ann. §§ 20-10-1201 *et seq.*

48.     The Protection of Long-Term Care Facility Residents Act mandates the development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the maintenance and operation of long-term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, like Kenneth Harris.

49.     The Protection of Long-Term Care Facility Residents Act mandates every licensed facility shall comply with all applicable standards and rules of the Office of Long-Term Care of the Arkansas Department of Human Services.

50.     The statutory duty imposed upon the facility licensee(s) to prevent deprivation or infringement of the resident's rights of Kenneth Harris was non-delegable. Thus, among the Nursing Home Defendants, the licensee(s) is directly liable to Plaintiff for any deprivation and

13

infringement of Kenneth Harris' resident's rights occurring as a result of its own action or inaction, and as a result of the action or inaction of any other person or entity, including employees, agents, consultants, independent contractors and affiliated entities, whether in-house or outside entities, individuals, agencies or pools, as well as any deprivation and infringement of Mr. Harris' resident's rights caused by Defendants' policies, procedures, whether written or unwritten, and common practices.

51.     Any person or entity acting as an employee or agent of Courtyard Gardens Health and Rehabilitation Center assumed and undertook to perform the licensee's non-delegable and statutorily-mandated duty to provide Kenneth Harris' nursing home resident's rights as set forth in Ark. Code Ann. §§ 20-10-1201 *et seq.* in the operation and management of Courtyard Gardens Health and Rehabilitation Center.

52.     Notwithstanding the responsibility of the licensee to protect and provide for these statutorily-mandated, nursing home resident's rights, Defendants infringed upon, and Kenneth Harris was deprived of rights mandated by Ark. Code Ann. §§ 20-10-1201 *et seq.* including, but not limited to, the following:

> a)     The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for Kenneth Harris, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:
>
> > 1)     The right to receive adequate and appropriate custodial service, defined as care for Kenneth Harris which entailed observation of diet and sleeping habits and maintenance of a watchfulness over his general health, safety, and well-being; and
> >
> > 2)     The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Mr. Harris or his designee or legal representative, which included a comprehensive

14

assessment of the needs of Mr. Harris, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b)   The right to regular, consultative, and emergency services of physicians;

c)   The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d)   The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Mr. Harris, and not directly furnished by the licensee;

e)   The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f)   The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g)   The right to be free from mental and physical abuse, and from physical and chemical restraints;

h)   The right of Mr. Harris to have privacy of his body in treatment and in caring for his personal needs;

i)   The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents;

j)   The right to participate in social, religious, and community activities;

k)   The right to the obligation of the facility to keep full records of the admissions and discharges of Mr. Harris and his medical and general health status, including:

1)   medical records;

2)   personal and social history;

3)   individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

15

4)     making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; and

l)     The right to be treated courteously, fairly, and with the fullest measure of dignity.

53.     The aforementioned infringement and deprivation of the rights of Kenneth Harris were the result of Defendants' failure to do that which a reasonably careful person would do under similar circumstances.

54.     As a result of the aforementioned violations, the Plaintiff, pursuant to Ark. Code Ann. § 20-10-1209(a)(4), is entitled to recover actual damages against the licensee of the facility. The Plaintiff asserts a claim for judgment for actual damages against Defendants, including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability and loss of dignity, in an amount to be determined by the jury and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

55.     The infringement or deprivation of the resident's rights of Kenneth Harris by Defendants was willful, wanton, gross, flagrant, reckless, or consciously indifferent. Pursuant to Ark. Code Ann. § 20-10-1209(c), Plaintiff is entitled to recover punitive damages against the licensee of the facility.

## COUNT FIVE: BREACH OF THE PROVIDER AGREEMENT

56.     Plaintiff incorporates the allegations contained in paragraphs 1-55 as if fully set forth herein.

57.     Upon becoming a resident of Courtyard Gardens, Mr. Harris, as a Medicare and/or Medicaid recipient, became a third-party beneficiary of the contract or provider agreement between Defendants and the state and federal governments.

16

58.     For consideration duly paid by Mr. Harris, or on his behalf, Defendants agreed to provide residents with personal and custodial care and professional nursing care in compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein. In addition, by entering into the agreement, Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State." Defendants further agreed that "the rights and privileges of the residents [were] of primary concern to the parties" and covenanted to "protect and preserve" the rights of the residents. The parties to the contract agreed "that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement."

59.     As the name implies, the provider agreement exists to pay for and provide for resident, personal, or custodial care and professional nursing care. The provider agreements between Defendants and the state and federal government were clearly intended to benefit the residents of Courtyard Gardens, including Kenneth Harris.

60.     Defendants breached the provider agreement and committed multiple acts of nonfeasance in failing to provide the care, goods, and services to industry standards, as required by law and as agreed, including but not limited to:

        a)      Nonfeasance in failing to provide, as promised, the care and services for Mr. Harris to attain or maintain his highest practicable physical, mental, and psychosocial well-being, in accordance with a comprehensive assessment and plan of care;

        b)      Nonfeasance in failing to provide, as promised, dietary services, including special diets, supplemental feedings, special delivery preparation,

17

assistance, and equipment required for preparing and dispensing oral feedings and special feeding devices;

c)     Nonfeasance in failing to provide, as promised, personal or custodial services and nursing care;

d)     Nonfeasance in failing, as promised, to implement policies and procedures so as to prevent infringement or deprivation of Mr. Harris' rights as a resident of a long term care facility;

e)     Nonfeasance in failing to provide, as promised, assistance to Mr. Harris in developing and carrying out a plan of care;

f)     Nonfeasance in failing to comply, as promised, with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

g)     Nonfeasance in failing to staff Courtyard Gardens with sufficient personnel to adequately meet the needs of Mr. Harris, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

61.     As a result of Defendants' breach of the provider agreement, Plaintiff asserts a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment, in an amount that exceeds that required for federal court jurisdiction in diversity of citizenship cases.

62.     Defendants are also liable for all consequential damages, because Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to Kenneth Harris, and, under the circumstances, Defendants should have understood that it had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

63.     Plaintiff seeks judgment for all foreseeable consequential damages, which flowed naturally from the failure of Defendants to provide the care, goods, and services promised under

the provider agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

64.     Plaintiff is entitled to seek punitive damages for breach of contract, because Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the provider agreement would naturally and probably result in injury or damage, yet Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

65.     Plaintiff, for good cause, is unable to attach a copy of the actual provider agreement upon which this claim is based, because it is in the possession of Defendants.

### COUNT SIX: DECEPTIVE TRADE PRACTICES

66.     Plaintiff incorporates the allegations contained in Paragraphs 1–65 as if fully set forth herein.

67.     At all times pertinent to this cause of action, Kenneth Harris was an "elder person" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a). As an "elder person" within the meaning of the Deceptive Trade Practices Act, the Plaintiff has a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

68.     At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. 4-88-107(a) provides that it is unlawful to:

   a.     Knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of:

      i.     Physical infirmity; or

      ii.     A similar factor;

      b.       Engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

69.      Ark. Code Ann. 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for any person to (1) act, use or employ any deception, fraud or false pretense, and (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

70.      The conduct of Defendants, as described herein, constitutes a deceptive practice in violation of the Deceptive Trade Practices Act. Defendants violated the Protection of Long Term Care Facilities Residents' Act and federal law which is a per se violation of the Deceptive Trade Practices Act. Defendants also failed to inform Plaintiff in Defendants' standard admission agreement that the Facility routinely does not meet minimum staffing requirements imposed by state and federal law.

71.      Defendants engaged in an unconscionable, false, and/or deceptive act or practice in business, commerce and/or trade by marketing themselves and holding themselves out to the public and Kenneth Harris as being able to meet the needs of elder residents of Courtyard Gardens. Defendants profited greatly as a result of their deceptive trade practices, but Defendants were aware that Courtyard Gardens could not meet the needs of its residents, including Kenneth Harris.

73.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Terry Cox, as attorney-in-fact for Kenneth Harris prays for judgment against Defendants as follows:

1.     For damages in an amount adequate to compensate Plaintiff for his injuries and damages sustained and exceeding that required by federal court jurisdiction in diversity of citizenship cases.

2.     For all general and special damages caused by the alleged conduct of Defendants.

3.     For the costs of litigating this case.

4.     For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204.

5.     For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Kenneth Harris and to deter Defendants and others from repeating such atrocities.

6.     For trial by jury.

7.     For all other relief to which Plaintiff is entitled.

Respectfully submitted,

Terry Cox, as attorney-in-fact for Kenneth Harris
**PLAINTIFF**

By:

Jared Woodard (2004148)
Bill Stanley (92033)
**STANLEY & WOODARD, PLC**
326 S. Church
Jonesboro, AR 72401
(870) 932-2000 (phone)
(870) 972-9999 (facsimile)
jared@stanleywoodard.com

*Attorneys for the Plaintiffs*

21